UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMIE ANTHONY MOMMENS,

     Plaintiff,

v.                                   Case No.:  2:21-cv-952-SPC-KCD

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT & RECOMMENDATION

Plaintiff Jamie Mommens sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner of Social Security's decision denying his application for disability insurance benefits and supplemental security income. (Doc. 1.)[1] For the reasons below, the Commissioner's decision should be affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 15, Doc. 18) and are not fully repeated here. In short, Mommens filed for disability benefits in 2019. (Tr. 15.) His application was

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

denied initially and again upon reconsideration. He then requested further

review before an administrative law judge ("ALJ"). (Tr. 15.)

Following a hearing, the ALJ concluded that Mommens suffers from

severe impairments including ankylosing spondylitis, pseudomonas infections

controlled with antibiotics, insomnia, depression, and anxiety. (Tr. 18.) Still,

the ALJ found Mommens had the residual functional capacity ("RFC") to

perform light work with several clarifications:

> [Mommens has] the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as, lift and/or carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no limits for sitting in an eight-hour workday. He is capable of standing and/or walking for up to six hours in an eight-hour workday. He is able to perform occasional postural functions of climbing ramps or stairs, kneeling and stooping. He is to perform no crawling, no crouching, and no climbing of ladders, ropes or scaffolds. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. The claimant is to perform no work with vibratory tools or equipment. In the course of work, the claimant is to have no exposure to extremes of heat, humidity or cold temperatures. The claimant is to perform no constant fingering, feeling and handling manipulations with the bilateral upper extremities; however, frequent fingering, feeling and handling manipulations remain intact. Secondary to his mental impairments, he retains the capacity to understand, remember and carry-out simple instructions and perform simple routine tasks as consistent with unskilled work.

(Tr. 21.)[2]

After considering the RFC and other evidence, including vocational expert testimony, the ALJ ultimately concluded that Mommens is not disabled because he can perform his past relevant work as a production worker. (Tr. 27-28.) The ALJ also found Mommens would be capable of successfully transitioning to other jobs that exist in significant numbers in the national economy. (Tr. 28-30.)

The ALJ issued an unfavorable decision, finding Mommens not disabled at any time from the alleged onset date. (Tr. 30.) The Appeals Council denied further review, and this lawsuit timely followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a

---

[2] The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

## III. Discussion

Mommens challenges the RFC on appeal. First, he claims the ALJ "rejected all of the physical opinions of record" and therefore "played doctor" in developing the RFC. (Doc. 15 at 11, 12.) Mommens says the ALJ should have instead re-contacted the treating physicians and further developed the record.

(*Id.* at 13.) Second, he alleges the ALJ failed to properly evaluate Dr. Alain Alvarez's medical opinion. (*Id.* at 14.)

### A. Playing Doctor and Development of the Record

Viewing Mommens' first claim with closer scrutiny, the Court sees two distinct arguments: first the ALJ "played doctor" by rejecting the medical opinions regarding his functional limitations; and second the ALJ should have further developed the record. These arguments are addressed in turn. It is first helpful, however, to summarize the physical opinions that the ALJ considered.

Mommens met with a rheumatologist, Dr. Alvarez, from before his alleged onset date through the date of the ALJ's decision. (Tr. 22-25.) Naturally, medical reports over this more than two-year period indicate some fluctuation in Mommens' functioning. But the most extreme limitations come from Dr. Alvarez's final assessment. (Tr. 26.) Dr. Alvarez found Mommens could not sit or stand for more than fifteen minutes at a time, could never lift weight on even an occasional basis, could never bend or stoop, and could never engage in gross manipulation with either hand. (Tr. 878.) The ALJ found this report to be unpersuasive and the restrictions too extreme. (Tr. 26.)

State agency consultants also evaluated Mommens and found his impairments not severe. (Tr. 72-99, 102-35.) The ALJ found these opinions unpersuasive too, concluding they understated the severity of Mommens'

restrictions. (Tr. 26.) Thus, the ALJ found both medical opinions unpersuasive—one in Mommens' favor and one against.

### 1. Playing Doctor

Mommens correctly states that "[t]he ALJ may not 'play doctor' by substituting her own uninformed medical evaluations for that of a medical professional." (Doc. 15 at 12 (citing *Sneed v. Comm'r of Soc. Sec.*, No. 6:13-CV-1453-ORL-TBS, 2015 WL 1268257, at *6 (M.D. Fla. Mar. 19, 2015).) But resolving conflicting medical evidence when formulating the RFC does not fall under this umbrella. *See Dale v. Comm'r of Soc. Sec.*, No. 2:20-CV-521-NPM, 2022 WL 909753, at *8 (M.D. Fla. Mar. 29, 2022). It is the ALJ's responsibility—and not the doctor's—to assess the claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("[A] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive[.]"). Thus, an ALJ does not assume the role of a doctor by sorting through conflicting evidence to make an RFC assessment. *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014); *see also Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007) (holding the ALJ did not substitute his judgment for the doctor; he found the opinion inconsistent with the record evidence and then assessed the RFC based on the record).

In creating the RFC, the ALJ is to consider *all* relevant evidence, medical and otherwise. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Error arises only when the ALJ rejects medical evidence "without (at least) providing a good reason for doing so." *Sneed*, 2015 WL 1268257, at *7; *see also Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992) (Johnson, J., concurring) ("Although the ALJ could have legitimately discounted the diagnoses, he could have done so only if he had clearly articulated his reasons for such action[.]"); *Whisby v. Colvin*, No. 5:13-CV-360 MTT, 2015 WL 150188, at *3-5 (M.D. Ga. Jan. 12, 2015) (finding error when the ALJ made an arbitrary determination).

Here, the ALJ provided her reasons for finding the medical opinions unpersuasive. (Tr. 26.) She noted that Dr. Alvarez's opinion conflicted with his prior assessments and even Mommens' own activities of daily living. (Tr. 25-26.) The ALJ also reasoned that both medical opinions were unpersuasive, at least partly, because they conflicted with each another. (Tr. 26.) Thus, by finding the medical opinions unpersuasive the ALJ was fulfilling her duty to evaluate conflicting evidence, not playing doctor.

Pivoting slightly, Mommens claims the ALJ's assessment left her unmoored with no medical evidence to guide the RFC assessment. (Doc. 15 at 12.) He argues that, as a result, the ALJ must have based her decision on nothing but her own lay musings on the raw medical data. (*Id.*) This reasoning is flawed. It implies the ALJ could not have considered a medical opinion at all

if she found it unpersuasive, an error one court labeled a "knock out analysis." *Whisby*, 2015 WL 150188, at \*4. It is an error because it assumes finding an assessment unpersuasive "either knock[s] out that assessment from consideration or obliterate[s] the analysis contained within it." *Id*. But that is not the result. An opinion, and the medical evidence behind it, can still be used by an ALJ even if determined unpersuasive. *See id*.

Although the ALJ here found the doctors' physical opinions unpersuasive, this did not leave her deciding the RFC on a bare record. The ALJ referenced Dr. Alvarez's findings when she considered the health assessments completed by the state agency medical consultants. (Tr. 26.) And the ALJ used Dr. Alvarez's findings and reports to rebuff his final opinion. Thus, contrary to the assertion that "it is unclear how the ALJ managed to determin[e] Mommens' functional limitations" (Doc. 15 at 12), the ALJ was led by Dr. Alvarez's records, even if she did not find his final opinion entirely persuasive.

As mentioned, the responsibility for determining a claimant's RFC rests with the ALJ. Thus, in *Castle v. Colvin*, the Eleventh Circuit rejected the contention that the RFC "should have been underpinned by a medical source opinion." 557 F. App'x at 854. The panel further explained that the ALJ was not "play[ing] doctor" and specified that "the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC." *Id*. at 853.

Similarly, in *Green v. Soc. Sec. Admin.*, the plaintiff argued that there was no medical opinion in the record for the ALJ to base his RFC determination that she could perform light work. 223 F. App'x at 923. The Eleventh Circuit rejected this argument, holding that treatment records from the plaintiff's physicians constituted substantial evidence supporting the RFC. *Id.*

Like in *Castle* and *Green*, the ALJ here did not play doctor and guess at Mommens' physical abilities. Instead, the ALJ weighed the evidence and reached a reasonable conclusion. Mommens' medical records and testimony provide sufficient support for the ALJ's RFC assessment pertaining to physical limitations. For instance, Mommens reported that he completes stretching exercises and pushups in the morning. (Tr. 25, 873.) He also performed daily living activities that demonstrated the physical ability to work, albeit with breaks. (Tr. 112.) Finally, medical examinations reflected normal strength and range of motion. (*See, e.g.*, Tr. 468.) From this evidence the ALJ could reasonably construct the RFC, and thus she did not err in making her assessment. *See, e.g.*, *Burgess v. Astrue*, No. 2:11-CV-3858-VEH, 2013 WL 754731, at *4-5 (N.D. Ala. Feb. 26, 2013).

*2. Failure to Develop the Record*

The ALJ has a basic duty to develop a full and fair record. But that does not relieve the claimant of his burden. "[T]he claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing

evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). An ALJ is required to step in only when the record lacks "sufficient evidence . . . to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). "The duty is triggered, for example, when there is an ambiguity in the record or when the record is inadequate to allow for proper evaluation of the evidence." *Mishoe v. Astrue*, No. 5:08-CV-371-OC-GRJ, 2009 WL 2499073, at *7 (M.D. Fla. Aug. 14, 2009).

Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). In evaluating the necessity for a remand, courts are "guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* To establish an evidentiary gap in the record, a claimant must "identify what facts could have been submitted that would have changed the outcome." *Correa v. Colvin*, No. 8:15-CV-461-T-TGW, 2016 WL 7334642, at *4 (M.D. Fla. Mar. 18, 2016).

Mommens' argument here fails first because the record contains adequate evidence for the ALJ to come to her decision. As explained above, the ALJ based her findings on medical evidence from Dr. Alvarez and the consultative examiners, as well as Mommens' testimony and activities of daily living. She also considered Mommens' disability report, emergency room

assessments, and statements from Mommens' mother. (Tr. 22-27.) This meets the adequacy threshold.

Mommens' argument also falls short because he has not "identif[ied] what facts could have been submitted that would have changed the outcome." *Correa*, 2016 WL 7334642, at *4. And without those facts, he cannot prove an evidentiary gap that creates unfairness or clear prejudice. *Id.* Mommens, instead, offers only potential facts and prejudice:

> Due to the ALJ's failure to develop the record by obtaining a medical source statement from one of Mommens' treating physicians or alternatively by failing to order a consultative examination, it is uncertain whether the current RFC is an accurate account of Mommens' physical limitations. . . . This error harmed Plaintiff, as had an appropriate development of the record occurred, a reasonable factfinder may have concluded he was entitled to benefits.

(Doc. 15 at 14.) In essence, he argues there *might* be an evidentiary gap that *might* be filled by further development. That won't cut it. Without more, the Court cannot say whether further development would have changed a thing.

**B. Contested Medical Opinion Findings**

Finding no error thus far, the Court turns to the claim that substantial evidence does not support the ALJ's decision to discount Dr. Alvarez's medical opinion.

A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). And because of their importance, the ALJ must explain "how [she] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* Put simply, the ALJ must assess the factors of supportability and consistency for each medical opinion.

Here, the ALJ shared how she evaluated these factors:

> The medical source statement submitted by Dr. Alverez is not persuasive (Ex. 19F). The extreme functional limitations assigned are wholly inconsistent with Dr. Alvarez's objective examination findings and the examination findings during a focused musculoskeletal examination at the hospital. All of the examinations in the record demonstrate a

> normal gait, minimal range of motion deficits, normal sensation, 5/5 motor strength, and no swelling of any joints. Further, the limitations are not supported by the course of treatment, showing generally conservative treatment with prescription medication, few injections, no inpatient hospitalizations for symptom flare-ups, and no surgical or other significantly invasive treatment.

(Tr. 26.) Mommens argues that substantial evidence does not support these conclusions. First, he disagrees with the ALJ's characterization of his treatment history as "conservative." (Doc. 15 at 15.) Second, he says by impermissibly "picking and choosing evidence," the ALJ wrongly found Dr. Alvarez's opinion to be inconsistent. (*Id.* at 16.) And third, he claims "the ALJ failed to explain *how* these findings were unsupportive." (*Id.* at 17.) Each argument is addressed in turn.

As for Mommens' claim that the ALJ mischaracterized his treatment as "conservative," Mommens argues this conclusion contradicts "established case law." (*Id.* at 16.) In support, he points to caselaw that generally found multiple epidural injections to be non-conservative. (*Id.*) But the question is not whether other courts characterize similar treatment as non-conservative or even whether the evidence is more likely to be considered non-conservative. Rather, it is whether substantial evidence supports the conservative determination. The ALJ's description shows how it does: "[Mommens' medical history included] prescription medication, few injections, no inpatient hospitalizations

for symptom flare-ups, and no surgical or other significantly invasive treatment." (Tr. 26.) And unlike the claimants in the cases Mommens cites, he received only one epidural injection in the relevant time frame. (Doc. 18 at 17.) In fact, if there was any mischaracterization it appears to be on Mommens' part. He claims the ALJ found him to have undergone "conservative treatment." But the ALJ hedged her characterization of his medical history by saying it included "*generally* conservative treatment." (Tr. 26 (emphasis added).) At bottom, there is ample evidentiary support for the ALJ's assessment of Mommens' treatment.

Mommens' cherry-picking argument is equally unpersuasive. He claims the ALJ improperly discredited Dr. Alvarez's opinion by citing "select unremarkable findings." But Mommens stops there. He never explains what "select unremarkable findings" the ALJ improperly relied on. (Doc. 15 at 16.) In other words, Mommens never identifies the "cherries" he claims the ALJ picked in the record. Thus, he never addresses how those cherries fail to provide the ALJ with substantial evidence.

Instead, Mommens declares his disagreement with the ALJ's finding that "[a]ll of the examinations in the record demonstrate a normal gait, minimal range of motion deficits, normal sensation, 5/5 motor strength, and no swelling of any joints." (Doc. 15 at 16-17.) Despite this finding failing to mention pain, Mommens argues it is contradicted by other evidence in the

14

record which verifies his pain and supports Dr. Alvarez's opinion. (*Id.*) This is just a thinly veiled request for the Court to re-weigh the conflicting evidence in his favor. But that is not something the Court can do. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) ("It is solely the province of the [Commissioner] to resolve conflicts in the evidence and assess the credibility of witnesses."). "When there is credible evidence on both sides of an issue," as here, "it is the . . . the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984).

As mentioned, the Court's duty is to consider whether substantial evidence supports the ALJ's findings about the consistency of Dr. Alvarez's opinions. And here there is. For example, the ALJ concluded Mommens' activities of daily living were "rather normal":

> the claimant reported an ability to take care of his personal hygiene, such as bathing and dressing, without assistance (Ex. 4E; Hearing Transcript). While he does not cook, he is able to make himself sandwiches and participate in light household chores such as laundry and wiping off counter tops until he feels pain (Ex. 4E). Admittedly, he reported he often takes breaks completing these tasks but he is physically capable of performing the work. Although the claimant does not drive, he testified he lost his license from driving while intoxicated and has not paid all of the fines; not because he is physically unable (Hearing Transcript). The claimant is able to grocery shop but only for a limited amount of time due to reported anxiety in crowds. He is able to manage

money by counting change and handling a savings account. The claimant reported he does not socialize or talk on the phone much and often isolates himself from other people (Ex. 4E). However, he reported to his mental health provider that he spends his time playing video games online with friends (Ex. 18F). All of this shows a rather normal ability to perform activities of daily living.

(Tr. 25.) Mommens even reported he performs stretching exercises and pushups in the morning. (Tr. 25, 873.) All this evidence is inconsistent with the extreme physical limitations Dr. Alvarez attributed to Mommens.

Finally, Mommens believes "the ALJ failed to explain *how* [Dr. Alvarez's] findings were unsupportive." (Doc. 15 at 17.) He states, "[t]he ALJ failed to articulate her reasoning here, and instead simply concluded Dr. Alavrez's opinion was unsupported." (Doc. 15 at 18.) The Court already went part-way down this road when it discussed whether the ALJ correctly characterized the treatment history as "conservative." This characterization is the ALJ's primary reason for discounting Dr. Alvarez's extreme limitations. The ALJ clearly stated, "the limitations are not supported by the course of treatment." (Tr. 26.) And then she explained why. Thus, she did address supportability—Mommens just doesn't like her reasons. Dr. Alvarez's own findings "demonstrate a normal gait, minimal range of motion deficits, normal sensation, 5/5 motor strength, and no swelling of any joints." (Tr. 26.) Thus, substantial evidence buttresses the ALJ's supportability finding.

That leaves one final issue. Mommens argues the ALJ's errors were not harmless. (Doc. 15 at 20.) But harmlessness only comes to bear if there were errors. Mommens has failed to demonstrate any, and thus this argument is moot.

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings. Accordingly, it is **RECOMMENDED** that the Commissioner be **AFFIRMED** and judgment be entered against Mommens.

**ENTERED** in Fort Myers, Florida on December 13, 2022.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.